UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DAVID G. OCAMPO, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. |
| | § | |
| MICHAEL J. ASTRUE, Commissioner | § | SA-10-CV-0502 XR (NN) |
| of the Social Security Administration, | § | |
| | § | |
| Defendant. | § | |

REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

TO: Honorable Xavier Rodriguez
United States District Judge

Plaintiff David G. Ocampo brought this action for judicial review of the final decision of the Commissioner of the Social Security Administration (the Commissioner), determining that Ocampo is not disabled for the purposes of the Social Security Act (the Act) and denying Ocampo's applications for Disability Income Benefits (DIB) and Supplemental Security Insurance (SSI). Ocampo asked the district court to reverse the Commissioner's decision and to render judgment in his favor.[1] In the alternative, Ocampo asked the court to remand the case for further proceedings.

---

[1]Docket entry # 1.

After considering Ocampo's brief supporting his complaint,[2] the brief supporting the Commissioner's decision,[3] the record of the SSA proceedings, the pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, and the entire record in this matter, I recommend affirming the Commissioner's decision.

I have jurisdiction to enter this report and recommendation under 28 U.S.C. § 636(b) and this district's general order, dated July 17, 1981, referring for disposition by recommendation all cases where a plaintiff seeks review of the Commissioner's denial of the plaintiff's application for benefits.[4]

**Jurisdiction**. The district court has jurisdiction to review the Commissioner's final decision as provided by 42 U.S.C. §§ 405(g), 1383(c)(3).

**Administrative Proceedings**. Based on the record, Ocampo exhausted his administrative remedies prior to filing this action in federal court. Ocampo applied for DIB and SSI benefits on March 24, 2006, alleging disability beginning on May 15, 2004.[5] This date coincides with the day Ocampo was terminated from his job as a courier for

---

[2]Docket entry # 9.

[3]Docket entry # 10.

[4]*See* Local Rules for the Western District of Texas, appx. C, p. 10.

[5]SSA record, pp. 124 & 127.

Labcorp.⁶ The Commissioner denied Ocampo's applications initially and on reconsideration.⁷ Ocampo then asked for a hearing before an ALJ. An ALJ held a hearing on August 8, 2008.⁸ The ALJ issued a decision on September 29, 2008, concluding that Ocampo is not disabled within the meaning of the Act.⁹ Ocampo asked the Appeals Council to review the decision.¹⁰ On April 22, 2010, the Appeals Council declined to review the decision, determining no reason existed for a review.¹¹ The ALJ's decision became the final decision of the Commissioner for the purpose of the district court's review pursuant to 42 U.S.C. § 405(g). Ocampo filed this action on June 17, 2010 seeking review of the Commissioner's decision.¹²

**Issue Presented**. Is the ALJ's decision that Ocampo is not under a "disability," as defined by the Act, supported by substantial evidence and does the decision comport with relevant legal standards?

---

⁶The background of Ocampo's termination is documented in Judge Mathy's report and recommendation in Cause No. 04-CV-538. *See* docket entry # 46.

⁷SSA record, pp. 77-78.

⁸*Id*. at p. 17.

⁹*Id*. at p. 115.

¹⁰*Id*. at p. 7.

¹¹*Id*. at p. 1.

¹²Docket entry # 1.

**Standard of review**.  In reviewing the Commissioner's decision denying disability benefits, the reviewing court is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards in evaluating the evidence.[13]  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[14]  Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[15]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[16]  In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from reweighing the evidence or substituting its judgment for that of the Commissioner.[17]  Conflicts in the

---

[13] *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).

[14] *Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[15] *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

[16] *Martinez*, 64 F.3d at 173.

[17] *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *see also Villa*, 895 F.2d at 1021 ("The court is not to reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.").

evidence and credibility assessments are for the Commissioner and not for the courts to resolve.[18] Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[19]

**Entitlement to benefits**. Every individual who meets certain income and resource requirements, has filed an application for benefits, and is under a disability, is eligible to receive benefits.[20] The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[21] A claimant shall be determined to be disabled only if his physical or mental impairment or impairments are so severe that he is unable to not only do his previous work, but cannot, considering his age, education, and work experience, participate in

---

[18] *Martinez*, 64 F.3d at 174.

[19] *Id*.

[20] 42 U.S.C. § 1382(a)(1) & (2).

[21] 42 U.S.C. § 1382c(a)(3)(A).

5

any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[22]

**Evaluation process and burden of proof**. The Commissioner's regulations provide that disability claims are to be evaluated according to a five-step process.[23] A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis.[24]

The first step involves determining whether the claimant is currently engaged in substantial gainful activity.[25] If so, the claimant will be found not disabled regardless of his medical condition or his age, education, or work experience.[26] The second step involves determining whether the claimant's impairment is severe.[27] If it is not severe, the claimant is deemed not disabled.[28] In the third step, the Commissioner compares

---

[22] 42 U.S.C. § 1382c(a)(3)(B).

[23] 20 C.F.R. §§ 404.1520 & 416.920.

[24] *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

[25] 20 C.F.R. §§ 404.1520 & 416.920.

[26] *Id.*

[27] *Id.*

[28] *Id.*

6

the severe impairment with those on a list of specific impairments.[29] If it meets or equals a listed impairment, the claimant is deemed disabled without considering his age, education, or work experience.[30] If the impairment is not on the list, the Commissioner, in the fourth step, reviews the claimant's residual functional capacity (RFC) and the demands of his past work.[31] If the claimant is still able to do his past work, the claimant is not disabled.[32] If the claimant cannot perform his past work, the Commissioner moves to the fifth and final step of evaluating the claimant's ability, given his residual capacities, age, education, and work experience, to do other work.[33] If the claimant cannot do other work, he will be found disabled. The claimant bears the burden of proof at the first four steps of the sequential analysis.[34] Once the claimant has shown that he is unable to perform his previous work, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is not only physically able to perform, but also, taking into account his exertional and nonexertional limitations, able to maintain for a significant period of

---

[29]*Id.*

[30]*Id.*

[31]*Id.*

[32]*Id.*

[33]*Id.*

[34]*Leggett*, 67 F.3d at 564.

7

time.³⁵  If the Commissioner adequately points to potential alternative employment, the burden shifts back to the claimant to prove that he is unable to perform the alternative work.³⁶

**The ALJ's findings and conclusions**.  In this case, the ALJ reached his decision at step four of the decision-making process.  The ALJ first determined that Ocampo was insured for DIB through Sept. 30, 2010.³⁷  At step one, the ALJ stated that it was unclear whether Ocampo had engaged in substantial gainful activity since his alleged onset date, but determined there was an independent basis for denying Ocampo's applications.³⁸  At step two, the ALJ determined Ocampo has the following severe impairments: arthritis, depression and psoriasis.³⁹  At step three, the ALJ determined these impairments do no meet or medically equal an impairment listed in 20 C.F.R. Part

---

³⁵*Watson  v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002).

³⁶*Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

³⁷SSA record, p. 6.  To be eligible for DIB, a person must be fully insured.  *See* 20 C.F.R. § 404.110.  "To be fully insured, a person needs at least six quarters of coverage, but not more than forty quarters of coverage."  Nat'l Org. of. Soc. Sec. Claimants Representatives, 1-2 Soc. Sec. Practice Guide § 2.03 (LexisNexis).  The formula for determining fully insured status is more complicated, but Ocampo does not challenge the Commissioner's determination about his date last insured.

³⁸*Id*., p. 11.

³⁹*Id*.

202, subpart P, appendix 1.[40]  At step four, the ALJ determined Ocampo has the residual capacity to perform at least light work and to perform his past relevant work as a courier.[41]  The ALJ concluded that Ocampo is not disabled under the Act.[42]

**Ocampo's allegations of error**.  Ocampo contends the ALJ made two errors: (1) Ocampo contends the ALJ erred by not finding his psoriasis meets listing 8.05. (2) Ocampo contends the ALJ erred in determining he has the residual functional capacity to perform light work and to perform his past work as a courier.

Listing 8.05.  Ocampo argued that substantial evidence shows his psoriasis meets listing 8.05.  Psoriasis is "a chronic skin disease characterized by circumscribed red patches covered with white scales."[43]  Listing 8.05 is defined in the Commissioner's regulations as follows: "Dermatitis (for example, psoriasis…), with extensive skin lesions that persist for at least 3 months despite continuing treatment as prescribed."  Psoriasis will meet "the duration requirement [of listing 8.05] if [it] results in extensive skin lesions that persist for at least 3 months despite continuing treatment as prescribed."  The Commissioner assesses the severity of skin disorders like psoriasis

---

[40]*Id.*, p. 12.

[41]*Id.*, pp. 12-13.

[42]*Id.*, p. 16.

[43]Medline Plus, *available at* http://www.nlm.nih.gov/medlineplus/mplusdictionary.html.

9

based "on the extent of [the claimant's] skin lesions, the frequency of flare-ups of…skin lesions, how…symptoms (including pain) limit [the claimant], the extent of [the claimant's] treatment, and how…treatment affects [the claimant]."[44] To meet the listing psoriasis must prevent a claimant from performing substantial gainful activity.

Despite his allegation of disability beginning on May 15, 2004, there is no medical evidence of psoriasis until June 14, 2007.[45] On that day, Ocampo complained to his treating physician about a rash to his scalp, neck and chest.[46] The treating physician referred Ocampo to a dermatologist, who reported on July 30, 2007 that the "scaly, erythematous plaques" on Ocampo's skin were consistent with psoriasis.[47] The dermatologist prescribed topical medications and UVB radiation. Ocampo's last UVB treatment was on September 4, 2007. When Ocampo returned to his treating physician on September 17, 2007, the doctor observed a skin rash and itching, and memorialized the dermatologist's diagnosis of psoriasis.[48] The doctor observed no lesions. Ocampo then saw a dermatologist at the UT Medicine School of Medicine, who also diagnosed

---

[44]20 C.F.R. pt. 404, subpt. B, app'x I, § 8.00C.

[45]Ocampo applied for disability based on arthritis and depression. SSA record, p. 148.

[46]SSA record, p. 297.

[47]*Id.*, p. 295.

[48]*Id.*, p. 296, bottom right corner of page.

Ocampo's skin condition as psoriasis.[49] When Ocampo returned to his treating physician on October 8, 2007, the doctor observed no lesions and prescribed a medication used for the treatment of psoriasis.[50] On December 5, 2007, the doctor observed at least one lesion—the doctor did not indicate how many lesions.[51] On January 20, 2008, the doctor wrote Ocampo's attorney and stated, "Secondary to his depression and anxiety disorders, [Ocampo] suffers from severe psoriasis. He has limited use of his hands and feet due to the psoriasis that his worsened over the years."[52] The doctor did not specify or quantify any functional limitation. On March 31, 2008, the doctor observed no rashes or lesions.[53] On June 17, 2008, Ocampo reported that his rash was better and the doctor found no lesions.[54] The doctor also found no lesions on September 17, 2008.[55] On October, 9, 2008, the doctor observed lesions to

---

[49]*Id.*, pp. 377-80.

[50]*Id.*, p. 337.

[51]*Id.*, p. 417.

[52]*Id.*, p. 336.

[53]*Id.*, p. 416.

[54]*Id.*, p. 415.

[55]*Id.*, p. 414.

Ocampo's skin.[56] On October 24, 2008, the doctor found skin rash, but no lesions.[57] After the ALJ rendered the challenged, unfavorable decision, the dermatologist discontinued the medication that Ocampo had been using for his psoriasis.[58] By January 1, 2009, Ocampo's rheumatologist observed that Ocampo's psoriasis was clear.[59] It was still clear when he returned on February 12, 2009.[60]

The foregoing evidence reflects no evidence of extensive skin lesions and no evidence of lesions that persisted for at least 3 months despite continuing treatment. The medical expert who testified at Ocampo's hearing characterized Ocampo's psoriasis as "ordinary chronic run of the mill psoriasis."[61] The doctor reported that Ocampo's medical record reflect no functional impairments from psoriasis. My study of the medical record supports that testimony—the record in this case contains no medical evidence of functional impairment due to psoriasis. During the hearing before the ALJ, Ocampo presented some photos of a psoriasis flare-up that occurred August 2006.[62] The

---

[56]*Id.*, p. 314.

[57]*Id.*, p. 412.

[58]*Id.*, p. 399.

[59]*Id.*, p. 397.

[60]*Id.*, p. 395.

[61]*Id.*, p. 34.

[62]*Id.*, p. 31.

medical expert characterized the photos as reflecting ordinary chronic psoriasis.[63] Substantial evidence supports the ALJ determination about listing 8.05 because no medical evidence shows Ocampo had extensive skin lesions that persisted for at least 3 months despite continuing treatment as prescribed[64] or reflects functional limitation due to psoriasis.

<u>Light work</u>. Ocampo contends the ALJ erred in determining that he can perform light work by not considering the non-exertional and environmental limitations caused by his psoriasis.

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities….[65]

The medical record indicates Ocampo can perform light work.

---

[63]*Id.*, p. 29.

[64]About listing 8.05, the ALJ wrote the following: "Medical expert, Dr. Earl Beard, testified that the claimant's psoriasis has not resulted in extensive skin lesions that have persisted for at least three months, despite continuing treatment as prescribed to satisfy the criteria for Listing 8.05." *Id.*, p. 12.

[65]20 C.F.R. 404.1567(b) & 416.967(b).

After reviewing Ocampo's medical records, the state agency doctor opined on June 29, 2006, that Ocampo has the following residual functional capacity: Ocampo can occasionally lift and/or carry 50 pounds and frequently lift and/or carry 25 pounds; stand and/or walk about 6 hours in an 8-hour day; sit about 6 hours in an 8-hour workday; unlimited in pushing and pulling other than indicated for lifting and carrying; and can frequently climb, balance, stoop, kneel, crouch and crawl.[66] The agency doctor also opined that Ocampo had no environmental limitations. The vocational expert testified that with this residual functional capacity, Ocampo can perform his past work as a courier.

Although the state agency doctor's assessment is consistent with the ability to perform light work, the assessment was made before the onset of Ocampo's psoriasis. Ocampo asserts that his psoriasis has since restricted him from working because his psoriasis medication — Soriatane — prevents him from working outdoors and because working makes him sweat. He relies on his testimony that he stopped mowing lawns because the work caused him to sweat, aggravating his psoriasis, and on evidence about the effects of sunlight when using Soriatane.

Ocampo's argument about working outdoors fails because being unable to work outdoors does not preclude the ability to perform substantial gainful activity; a person

---

[66]SSA record, pp. 272-76.

14

capable of performing light work but restricted from working outdoors can still perform light work indoors. Ocampo's reliance on Soriatane fails because: (1) the medical record does not document any aggravation of Ocampo's psoriasis from using Soritane, (2) Soriatane does not ordinarily require a user to avoid all sun,[67] (3) there are other medications for treating psoriasis,[68] and (4) Ocampo no longer uses Soriatane. A person who has the ability to perform light work can work indoors and avoid unnecessary or prolonged exposure to sunlight and wear protective clothing and sun screen. After the ALJ rendered an unfavorable decision but before the Appeals Council denied review, Ocampo's dermatologist stopped Ocampo's use of Soriatane.[69] Shortly thereafter, Ocampo's skin was clear.[70]

---

[67]The generic name for Soriatane is acitretin. The restrictions for the drug state, "plan to avoid unnecessary or prolonged exposure to sunlight and to wear protective clothing, sunglasses, and sunscreen. Do not use sunlamps while taking acitretin. Acitretin may make your skin sensitive to sunlight." PubMed Heatlh, *available at*http://www.ncbi.nlm.nih.gov. The precautions for the drug advise a user to tell his doctor if he experiences sunburn. *Id*.

[68]For example, cyclosporin is used in the treatment of psoriasis. SSA record, p. 380 (prescribing cyclosporin after a psoriasis flare-up).

[69]SSA record, p. 399 (on Dec. 18, 2008, Ocampo's rheumatologist wrote that dermatologist stopped Soriatane).

[70]*Id*., pp. 395 & 397 (on Jan. 1, 2009 & Feb. 12, 2009, Ocampo's rheumatologist wrote that Ocampo's skin was clear, no psoriasis).

Moreover, Ocampo testified that he stopped mowing lawns because of pain due to arthritis, not to psoriasis.[71] Even though he alleged disability beginning on May 15, 2004, and applied for disability benefits based on arthritis and depression, he worked for two years after May 15, 2004, mowing lawns. The medical evidence shows only mild degenerative arthritis of the hands and mild spondylosis of the lumbar spine.[72] While these conditions may cause pain, nothing indicates Ocampo's pain is so severe as to preclude light work. Substantial evidence supports the ALJ's determination that Ocampo can perform light work and perform his past work as a courier.

**Recommendation**. Although the record in this case consists of 510 pages, there is nothing in the medical records that contradicts the ALJ's decision. Most of the record consists of duplicate medical records and administrative paperwork associated with Ocampo's applications. I recommend affirming the Commissioner's decision because substantial evidence supports the Commissioner's determination that Ocampo's psoriasis does not meet listing 8.05 and that Ocampo can perform light work and his former work as a courier.

---

[71] *Id.*, p. 30.

[72] *Id.*, pp. 217-18 (X-rays of hands showed subtle degenerative change); p. 216 (unremarkable X-ray of lumbar spine); p. 285 (MRI of lumbar spine showed spondylosis involving L4-L5 disc; no obvious disc herniation, nerve root compression or neural foraminal stenosis; and canal at L3-L4 is developmentally small); p. 478 (X-ray of cervical spine showed no acute bony abnormality).

**Instructions for Service and Notice of Right to Object/Appeal**.  The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed within 14 days after being served with a copy of same, unless this time period is modified by the district court.[73]  Such party shall file the objections with the clerk of the court, and serve the objections on all other parties and the magistrate judge.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[74]  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of

---

[73] 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[74] *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root*, 200 F.3d 335, 340 (5th Cir. 2000).

plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.[75]

**SIGNED** on July 18, 2011.

_____
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[75]*Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).