# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| DAVID G. OCAMPO, | § § § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. |
| | § | |
| MICHAEL J. ASTRUE, | § | SA-10-CA-0502- XR |
| Commissioner of the Social | § | |
| Security Administration, | § § | |
| Defendant. | § | |

## ORDER

On this date, the Court considered the Report and Recommendation of the United States Magistrate Judge, filed July 18, 2011 (docket no. 11), and the objections thereto (docket no. 15). The Magistrate Judge recommended affirming the Commissioner's decision to deny benefits. After careful consideration, the Court will affirm the Commissioner's decision.

## Introduction

Plaintiff seeks review and reversal of the administrative denial of his application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) by the Administrative Law Judge (ALJ). Ocampo contends that the ALJ made two errors. First, he contends the ALJ erred by not finding that his psoriasis meets listing 8.05. Second, Ocampo contends that the ALJ erred in determining that he has the residual functional capacity to perform light work and to perform his past work as a courier. Ocampo maintains that the ALJ made errors of law that require the Court to reverse the decision to deny him benefits. Ocampo asks the Court to reverse the decision and to render judgment in his favor. In the alternative, Ocampo asks the Court to reverse the decision and

remand the case for further factual development.

## Administrative Proceedings

Ocampo filed for SSI/DIB benefits on March 24, 2006, alleging disability beginning May 15, 2004.[1] The Commissioner denied Ocampo's applications initially and on reconsideration.[2] Ocampo then asked for a hearing. A hearing was held before the ALJ on August 8, 2008.[3] The ALJ issued a decision on September 29, 2008, concluding that Ocampo is not disabled within the meaning of the Social Security Act (the Act).[4] Ocampo then asked the Appeals Council to review the decision.[5] On April 22, 2010, the Appeals Council declined the review, determining no reason existed for a review.[6] The ALJ's decision became the final decision of the Commissioner for the purpose of the Court's review pursuant to 42 U.S.C. § 405(g). Ocampo filed an action seeking review of the Commissioner's decision on June 17, 2010.[7]

## Analysis

**A. Standard of Review**

In reviewing the Commissioner's decision denying disability benefits, the reviewing court is limited to determining whether substantial evidence supports the decision and whether the

---

[1] SSA record, pp. 124 & 127.

[2] *Id.* at pp. 77-78.

[3] *Id.* at p. 17.

[4] *Id.* at p. 115.

[5] *Id.* at p. 7.

[6] *Id.* at p. 1.

[7] *See* Ocampo's complaint, docket entry # 1.

Commissioner applied the proper legal standards in evaluating the evidence.[8] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[9] Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[10]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[11] In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from reweighing the evidence or substituting its judgment for that of the Commissioner.[12] Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve.[13] Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work

---

[8]*Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).

[9]*Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[10]*Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

[11]*Martinez*, 64 F.3d at 173.

[12]*Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *see also Villa*, 895 F.2d at 1021 (The court is not to reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.).

[13]*Martinez*, 64 F.3d at 174.

experience.[14]

### 1. Entitlement to Benefits

Every individual who is insured for disability benefits, has not reached retirement age, meets certain income and resource requirements, has filed an application for benefits, and is under a disability, is eligible to receive DIB.[15] Every individual who meets certain income and resource requirements, has filed an application for benefits, and is under a disability, is eligible to receive SSI benefits.[16] The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[17] A claimant shall be determined to be disabled only if his or her physical or mental impairment or impairments are so severe that he or she is unable to not only do his or her previous work, but cannot, considering his or her age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he or she applied for work.[18]

### 2. Evaluation Process and Burden of Proof

---

[14]*Id.*

[15]42 U.S.C. § 423(a)(1).

[16]42 U.S.C. § 1382(a)(1) & (2).

[17]42 U.S.C. § 1382c(a)(3)(A).

[18]42 U.S.C. § 1382c(a)(3)(B).

Regulations set forth by the Commissioner prescribe that disability claims are to be evaluated according to a five-step process.[19] A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis.[20]

The first step involves determining whether the claimant is currently engaged in substantial gainful activity.[21] If so, the claimant will be found not disabled regardless of his medical condition or his age, education, or work experience.[22] The second step involves determining whether the claimant's impairment is severe.[23] If it is not severe, the claimant is deemed not disabled.[24] In the third step, the Commissioner compares the severe impairment with those on a list of specific impairments.[25] If it meets or equals a listed impairment, the claimant is deemed disabled without considering his or her age, education, or work experience.[26] If the impairment is not on the list, the Commissioner, in the fourth step, reviews the claimant's residual functional capacity and the demands of his or her past work.[27] If the claimant is still able to do his or her past work, the claimant

---

[19] 20 C.F.R. §§ 404.1520 and 416.920.

[20] *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

[21] 20 C.F.R. §§ 404.1520 and 416.920.

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.*

[26] *Id.*

[27] *Id.*

is not disabled.[28] If the claimant cannot perform his or her past work, the Commissioner moves to the fifth and final step of evaluating the claimant's ability, given his or her residual capacities, age, education, and work experience, to do other work.[29] If the claimant cannot do other work, he or she will be found disabled. The claimant bears the burden of proof at the first four steps of the sequential analysis.[30] Once the claimant has shown that he or she is unable to perform his or her previous work, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is physically able to perform and able to maintain for a significant period of time when taking into account his exertional and nonexertional limitations.[31] If the Commissioner adequately points to potential alternative employment, the burden shifts back to the claimant to prove that he or she is unable to perform the alternative work.[32]

**B. The Magistrate Judge's Recommendation and Plaintiff's Objections**

The ALJ reached the decision that Ocampo was not disabled under the Act at step four of the decision making process.[33] Ocampo alleges two points of error from the ALJ's decision.[34] Ocampo alleges the first error was not finding his psoriasis meets listing 8.05.[35] Ocampo also alleges error

---

[28]*Id.*

[29]*Id.*

[30]*Leggett*, 67 F.3d at 564.

[31]*Watson v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002).

[32]*Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

[33]Report and Recommendation, p. 8.

[34]*Id.* at p. 9.

[35]*Id.*

in determining that he has the residual functional capacity to perform light work and to perform his past work as a courier.[36]

In response to the first alleged point of error, the Magistrate Judge found that substantial evidence supports the ALJ's determination about listing 8.05 because there was no medical evidence showing the required duration for Ocampo's psoriasis and no functional limitation.[37] Listing 8.05 includes: "dermatitis (for example, psoriasis...), with extensive skin lesions that persist for at least 3 months despite continuing treatment as prescribed."[38]

The Magistrate Judge's review included the following. The claimant claimed disability beginning on May 15, 2004; however, there is no medical evidence of psoriasis until June 14, 2007.[39] On July 30, 2007, Ocampo saw a dermatologist who prescribed medication for psoriasis.[40] Ocampo went back to his treating physician on September 17, 2007, and the doctor did not observe any lesions.[41] The doctor also did not observe any lesions on October 8, 2007.[42] On December 5, 2007, the doctor observed at least one lesion, but he did not indicate how many.[43] On January 20, 2008, the doctor wrote Ocampo's attorney and stated that Ocampo suffers from severe psoriasis, and he has

---

[36]*Id.*

[37]*Id.* at p. 13.

[38]20 C.F.R. Pt. 404, Subpt. P, App. 1.

[39]Report and Recommendation, p. 10.

[40]*Id.*

[41]*Id.*

[42]*Id.* at p. 11.

[43]*Id.*

7

limited use of his hands and feet.[44] However, the doctor did not specify or quantify any functional limitation. On March 31, 2008, the doctor observed no rashes or lesions.[45] There were also no lesions reported on June 17, 2008 and September 17, 2008.[46] Lesions were observed on October 9, 2008, but were clear by October 24, 2008.[47] By January 1, 2009, Ocampo's rheumatologist observed that his psoriasis was clear, and it was still clear on February 12, 2009.[48]

The Magistrate Judge found that there was no evidence of extensive skin lesions nor evidence of lesions persisting for at least three months despite continuing treatment.[49] The Magistrate Judge also found that there was no evidence supporting the allegation that the evidence reflects functional limitations due to psoriasis.[50] This finding was grounded on the fact that the medical expert classified Ocampo's psoriasis as "ordinary chronic run of the mill psoriasis," and the medical record reflected no functional impairments from psoriasis.[51]

The ALJ determined that Ocampo can perform light work and his past work as a courier.[52] The Magistrate Judge found that substantial evidence supported the ALJ's decision that the medical

---

[44]Report and Recommendation, p. 11.

[45]*Id.*

[46]*Id.*

[47]*Id.*

[48]*Id.*

[49]*Id.*

[50]*Id.*

[51]*Id.*

[52]*Id.* at p. 9.

record showed Ocampo is capable of doing light work and his past work as a courier.[53] On June 29, 2006, the state agency doctor opined that Ocampo can occasionally lift and/or carry 50 pounds and frequently lift and/or carry 25 pounds; stand and/or walk about 6 hours in an 8-hour day; sit about 6 hours in an 8-hour workday; is unlimited in pushing and pulling other than indicated for lifting and carrying; and can frequently climb, balance, stoop, kneel, crouch and crawl.[54] He also opined that he has no environmental limitations.[55] The state agency doctor's assessment is consistent with the ability to perform light work.[56] This assessment occurred before the onset of Ocampo's psoriasis, which he claims has hindered him further because the medication–Soriatane–prevents him from working outdoors.[57] The Magistrate Judge concluded that being unable to work outdoors does not prevent someone from engaging in substantial gainful activity because someone capable of performing light work can still perform that light work indoors.[58] The Magistrate Judge also rejected Ocampo's arguments related to his use of Soriatane on four grounds.[59] First, the medical record does not document any aggravation of Ocampo's psoriasis from using Soriatane.[60] Second, Soriatane does

---

[53] *Id.* at p. 16.

[54] *Id.* at p. 14.

[55] *Id.*

[56] *Id.*

[57] *Id.*

[58] *Id.* at p. 15.

[59] *Id.*

[60] *Id.*

not ordinarily require a user to avoid all sun.[61] Third, there are other medications for treating psoriasis.[62] And finally, Ocampo is no longer using Soriatane.[63] Before the Appeals Council denied review, Ocampo's doctor stopped his use of Soriatane, and shortly after, Ocampo's skin was clear.[64]

In addition, the Magistrate Judge found that Ocampo stopped mowing lawns because of his arthritis.[65] The record shows that Ocampo only has mild degenerative arthritis of the hands and mild spondylosis of the lumbar spine.[66] There is nothing in the record to indicate that his pain is so severe as to prevent him from doing light work.[67] The Magistrate Judge found that substantial evidence supported the ALJ's determination that Ocampo can perform light work and his past work as a courier.[68]

The Plaintiff objects generally to the entire report and recommendation of the Magistrate Judge.[69] Specifically, the Plaintiff objects to the Magistrate Judge's conclusion that substantial evidence supports the ALJ's determination that he does not meet listing 8.05.[70] Plaintiff contends

---

[61] Report and Recommendation, p. 15.

[62] *Id.*

[63] *Id.*

[64] *Id.*

[65] *Id.* at p. 16.

[66] *Id.*

[67] *Id.*

[68] *Id.*

[69] Plaintiff's Objections, p. 1.

[70] Plaintiff's Objections, p. 2.

that the chronic psoriasis would in turn trigger "flare-ups" of the disease, which were brought on by sweating.[71] Plaintiff also bases his objections on testimony that there had been lesions on his private parts for about a year and a half.[72] Plaintiff also believes that Dr. Beard was combative and not truly objective in his testimony.[73]

Plaintiff also objects specifically to the Magistrate Judge's conclusion that substantial evidence supports the ALJ's determination that Plaintiff can perform light work and his past work as a courier.[74] Plaintiff contends that the vocational expert testified that the Plaintiff might be able to perform four different jobs that all required Plaintiff to work out-of-doors or sweat or all had production requirements that could not be met if Plaintiff suffered the side effects caused by his medication.[75] Plaintiff argues that because of these limitations he would not be able to perform these four jobs or his past relevant work as a courier.[76] In the alternative, Plaintiff wants additional evidence relating to the environmental and non-extertional limitations imposed by Plaintiff's conditions to be weighed before an appropriate decision can be rendered.[77]

## C. Analysis

Plaintiff claims that the ALJ erred by not finding his psoriasis meets listing 8.05 and that the

---

[71]*Id.*

[72]*Id.*

[73]*Id.*

[74]*Id.* at p. 3.

[75]*Id.*

[76]*Id.*

[77]Plaintiff's Objections, p. 4.

ALJ erred in determining Ocampo has the residual functional capacity to perform light work and to perform his past work as a courier.

### 1. Whether there is substantial evidence to support the ALJ's finding that Ocampo's psoriasis does not meet listing 8.05.

The ALJ determined that Ocampo's psoriasis was a severe impairment.[78] However, the ALJ concluded that Ocampo's psoriasis did not meet listing 8.05.[79] Ocampo argues that this was error because sweating would trigger "flare ups" of the disease.[80] He also argues that his psoriasis would not go away and would be a "chronic ongoing condition."[81] However, Ocampo fails to establish the existence of the criteria for listing 8.05.[82]

The reviewing court must look to whether there was substantial evidence to support the Commissioner's decision.[83] If the findings are supported by substantial evidence, then they are conclusive and must be affirmed.[84] To meet listing 8.05, Ocampo's psoriasis must cause extensive skin lesions that persist for at least three months despite continuing treatment as prescribed.[85] In evaluating whether skin lesions are extensive or not, the court will look to whether the skin lesions

---

[78]SSA Record, p. 11.

[79]*Id.* at p. 12.

[80]Plaintiff's Objections, p. 2.

[81]*Id.*

[82]*See* 20 C.F.R. Pt. 404, Subpt. P, App. 1.

[83]*Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

[84]*Id.*

[85]20 C.F.R. Pt. 404, Subpt. P, App. 1, § 8.00(c)(1) ("Extensive skin lesions are those that involve multiple body sites or critical body areas, and result in a very serious limitation.").

cause serious limitation of movement.[86] In addition, the claimant must provide medical evidence to support all of the criteria for a listed impairment.[87]

There is substantial evidence to support the ALJ's determination. There is no objective medical evidence to support a finding that Ocampo's psoriasis meets listing 8.05. There are several instances in the record when Ocampo's treating physician observed no lesions from his psoriasis.[88] There is nothing in the record to indicate that extensive skin lesions persisted for at least three months. There is evidence that Ocampo's psoriasis was responding to treatment. By January 2, 2009, Ocampo's doctor observed that his psoriasis was clear and still clear the next month.[89] Further, the medical expert testified that his condition was "ordinary chronic run of the mill psoriasis."[90] He also stated that there was no way Ocampo's psoriasis could meet listing 8.05.[91] Nor was there evidence of very serious limitations due to the lesions. Ocampo's doctor wrote to his attorney stating that "[Ocampo] had limited use of his hands and feet due to the psoriasis that has worsened over the years."[92] However, the doctor did not further specify the functional limitations nor quantify it.[93]

---

[86] *Id.*

[87] *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990).

[88] SSA Record, pp. 295-417.

[89] *Id.* at pp. 395-97.

[90] *Id.* at p. 34.

[91] *Id.*

[92] SSA Record, p. 336.

[93] *See id.*

Ocampo testified that he had to stop mowing lawns because of arthritis, not the psoriasis.[94] But the medical record reflects that Ocampo had only mild arthritis and no functional limitations.[95] The medical expert testified that Ocampo's arthritis did not result in an inability to ambulate effectively, an inability to perform fine and gross movements effectively, or motor, sensory, or reflex loss.[96] In fact, the record shows that Ocampo can perform a variety of tasks consistent with light work.[97]

Therefore, there is substantial evidence supporting the ALJ's conclusion that Ocampo's psoriasis did not meet listing 8.05 because there is no medical evidence of lesions persisting for at least three months and nothing in the record to reflect a functional limitation due to that psoriasis.

**2. Whether there is substantial evidence to support the ALJ's finding that Ocampo has the residual functional capacity to perform light work and to perform his past work as a courier.**

The ALJ found at step four of the analysis that Ocampo can perform light work and his past work as a courier.[98] Ocampo contends that his medications prevent him from working in the sun.[99] He argues that his psoriasis and resulting psoriatic arthritis were aggravated by his exposure to the sun and/or sweating.[100] Ocampo also claims that the jobs that the vocational

---

[94]*Id.* at p. 30.

[95]*Id.* at p. 34.

[96]*Id.*

[97]*Id.* at p. 12.

[98]*Id.* at pp. 13-16.

[99]Plaintiff's Brief, p. 8.

[100]*Id.*

expert stated that Ocampo might be able to perform all had production requirements that could not be met if Ocampo suffered side effects from his medication.[101]

The reviewing court must look to whether there is substantial evidence to support the ALJ's findings.[102] If there is substantial evidence showing that Ocampo could perform light work and his past work as a courier, then the ALJ's finding of no disability must be affirmed.[103] The state agency doctor opined that Ocampo has the following residual functional capacity: he can occasionally lift and/or carry 50 pounds and frequently lift and/or carry 25 pounds; stand and/or walk about 6 hours in an 8-hour day; sit about 6 hours in an 8-hour workday; is unlimited in pushing and pulling other than indicated for lifting and carrying; and can frequently climb, balance, stoop, kneel, crouch and crawl.[104] This is at least consistent with the ability to perform light work.[105]

Ocampo's argument is that his medication prevents him from working outside.[106] Soriatane's restrictions include avoiding prolonged exposure to sunlight and wearing protective clothing.[107] The ALJ found that Ocampo has the ability to perform light work, not that he had to be outdoors, and light work may be done indoors. The record also shows that sweating does not

---

[101] *Id.*

[102] *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

[103] *See id.*

[104] SSA Record, pp. 272-276.

[105] 20 C.F.R. § 220.132(b) (1991).

[106] Plaintiff's Objections, p. 3

[107] SSA Record, p. 188.

trigger Ocampo's "flare ups" and that sweating may only cause secondary irritation.[108] The medical expert testified that he did not know what causes the "flare ups" and that Ocampo had no environmental limitations.[109]

Ocampo's argument that the recommended jobs have production requirements that could not be met if Ocampo suffered medication side effects fails because there is no objective medical evidence showing that Ocampo had suffered these side effects. Ocampo's claim is that *if* he suffers these side effects, then he may not be able to meet the production requirements.[110] Ocampo also testified that he stopped mowing lawns because of his arthritis two years after starting.[111] However, the objective medical evidence shows only mild degenerative arthritis of the hands and mild spondylosis of the lumbar spine.[112] Along with the doctor's testimony that his arthritis was mild, there is substantial evidence supporting the ALJ's determination that Ocampo could perform light work.

Moreover, there is no evidence contrary to the finding that Ocampo was capable of performing his past work as a courier. The vocational expert opined that Ocampo was still

---

[108] *Id.* at p. 34.

[109] *Id.*

[110] Plaintiff's Brief, p. 8.

[111] SSA Record, p. 30.

[112] SSA Record, pp. 217-18 (X-rays show subtle degenerative change); p. 285 (MRI shows spondylosis of lumbar spine; no obvious disc herniation, nerve root compression or neural foraminal stenosis; and canal at L3-L4 is developmentally small); p. 478 (X-ray of cervical spine showed no acute bony abnormality).

capable of performing his prior job as a courier.[113] After his firing, Ocampo tried to get his job back after filing an EEOC complaint, which indicates he was still able to perform this job.[114] After that attempt failed, Ocampo went to mow lawns, which required more strenuous exertion.[115] This job demanded more physically from Ocampo, and he continued that job for two years after being a courier. There is nothing in the record to contradict the ALJ's determination and there is substantial evidence supporting his conclusion that Ocampo could perform his past courier work.

**D. Conclusion**

The Court accepts the Magistrate Judge's recommendation and affirms the Commissioner's decision denying benefits. The clerk is directed to enter a final judgment and to close this case.

It is so ORDERED.

SIGNED this 13th day of September, 2011.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

[113]SSA Record, p. 48.

[114]*Id.* at p. 26.

[115]*Id.* at p. 27.